126 So.2d 464

**W. J. ROLLAN et al.**

v.

**Moody S. POSEY et ux.**

3 Div. 838.

Supreme Court of Alabama.

Jan. 26, 1961.

Taylor & Newby, Prattville, Omar L. Reynolds, and Reynolds & Reynolds, Clanton, for appellants.

Gipson & Bridges, Prattville, for appellees.

COLEMAN, Justice.

This is an appeal from a final decree of the circuit court, in equity, establishing a boundary line.

Complainants' land lies on the north side and respondents' land on the south side of the disputed line. Under a deed to respondent W. J. Rollan, the respondents claim the southeast quarter of the northeast quarter of Section 12, Township 17, Range 15 East, in Autauga County. The respondents claim that the true boundary between the lands of the parties is the north boundary line of that forty acres.

Autauga Creek flows along a meandering course from west to east across the north end of said forty acres. Complainants have a deed to the Booth Place. The deed describes the Booth Place by courses and distances and the boundary at one instance is described as " * * * thence south 40 degrees west 2.00 chains to Autauga Creek, thence up Autauga Creek to a point where Breakfast Creek runs into Autauga Creek * * *." Complainants claim that the true boundary is "the thread or center of Autauga Creek." Both parties lay claim to the land lying between the north boundary of said forty acres and Autauga Creek, and both parties have a deed to the disputed strip.

The court heard testimony ore tenus and established the line as claimed by complainants. Respondents have appealed.

Respondents contend that the court erred in establishing the line as aforesaid; in admitting in evidence an affidavit dated November 5, 1951, which affirms that complainants have been in adverse possession of the Booth Place for 35 years; and in rendering a final decree in the absence of a necessary party, namely, The Federal Land Bank of New Orleans, the mortgagee in a mortgage covering the land of complainants which mortgage is admittedly outstanding and unpaid.

1. Respondents state in brief that because complainants' deed recites that the boundary runs "to Autauga Creek," the court could not "find upon any theory that the center of Autauga Creek is the true boundary line."

█ We do not agree. The line is described in complainants' deed as running "to Autauga Creek, thence up Autauga Creek to a point," etc. We consider Autauga Creek as nonnavigable because, being above tidewater, it is, prima facie, not a navigable stream, Rhodes v. Otis, 33 Ala. 578; Olive v. State, 86 Ala. 88, 5 So. 653, 4 L.R.A. 33; Morrison Brothers & Co. v.

Coleman, 87 Ala. 655, 6 So. 374, 5 L.R.A. 384. There is neither evidence nor contention that it is navigable. Briefly the law is that adjoining proprietors of land having a nonnavigable stream as a boundary line between them take each to the middle or thread of the stream. Bullock v. Wilson, 2 Port. 436; Greenfield v. Powell, 218 Ala. 397, 118 So. 556. The language of a deed was: "Thence south to the Arkansas river; thence up said river to where it is intersected by the south line of the town." The court held that where, as in that deed, a nonnavigable river is named as a monument, the grant extends to its center, and the thread of the stream is the true boundary. Hanlon v. Hobson, 24 Colo. 284, 51 P. 433, 435, 42 L.R.A. 502, 513. The presumption that the line between owners bordering on a nonnavigable stream is the thread of the stream is based on the assumption that the grantor who conveyed the land bordering the stream intended that the boundary of the lands of the grantee should extend to the thread of the stream. 8 Am. Jur. 761, Boundaries, § 22. This presumption, founded upon the assumed intent of the parties, has now become a rule of property. If the grantor desires to retain his title to the land underneath the water, the presumption must be negatived by express words or such description as clearly excludes it from the land conveyed. Stewart v. Turney, 237 N.Y. 117, 142 N.E. 437, 31 A.L.R. 960. The words in complainants' deed in the instant case certainly do not exclude the land under the water. If Autauga Creek is the correct boundary line between the lands of the instant parties, and we think it is the correct line, then the court was not in error in establishing the thread of the stream as the boundary line.

2. Respondent W. J. Rollan claims title to SE¼ of NE¼ of said Section 12 by a deed from Metropolitan Life Insurance Company, a corporation, dated November 10, 1937. The other respondents claim title to their respective parcels of said forty acres by deeds from W. J. Rollan. Rollan placed in evidence deeds showing a chain of conveyances ending in him in

1937 as aforesaid and commencing with a deed executed by A. Y. Smith dated November 29, 1900. Complainants claim title to the Booth Place by a deed from Myra Booth Murphree, Alice Booth Wilkinson, and their respective spouses, dated January 20, 1945. The description of the Booth Place in deed to complainants includes that portion of SE¼ of NE¼ of said Section 12 lying between Autauga Creek and the north boundary line of said forty acres. The deeds placed in evidence show a chain of conveyances to complainants ending in them in 1945 as aforesaid and commencing with two deeds from Daniel B. Booth to his wife, both dated January 5, 1916.

Respondents (appellants) argue that "appellants' record title to the disputed strip antedates that of the appellees for a period of some sixteen years," and, therefore, because there is "a conflict in the survey or an overlapping in the lands conveyed that the elder survey and the elder grant will control," citing Snodgrass v. Snodgrass, 212 Ala. 74, 101 So. 837; Adams v. Wilson, 137 Ala. 632, 34 So. 831; Dunn v. Stratton et al., 160 Miss. 1, 133 So. 140; 11 C.J.S. Boundaries §§ 60–61, pp. 632–633.

There is only one survey in the record. There is no conflicting survey. There is an overlapping in the descriptions in the deeds in that the descriptions in the deeds of both parties include the disputed strip of land. We do not understand, however, that either party has proved ownership of the record title because neither traces title from the United States or other sovereign. We do not think the evidence will support a finding that respondents proved anywhere a conveyance from a grantor in possession. It is held in Dunn v. Stratton, supra, that the elder of two deeds from a common grantor will prevail, but in the instant case the two chains of conveyances do not emanate from a common grantor. We have not been cited to nor do we know of any case which holds that a claim of title is superior to another merely because the first claim rests on a deed at the end of a chain of conveyances

which commences with a deed from a private person, bearing an earlier date than the deed from a different private person with which the second chain of conveyances commences. Appellants' argument based on the fact that the first deed in their chain is dated 1900 while the first deed in appellees' chain is dated 1916 is without merit. Appellants have not shown a superior title to the disputed strip by their chain of conveyances commencing in 1900 as aforesaid.

3. In 1954, respondent W. J. Rollan employed a surveyor and subdivided the SE ¼ of NE¼ of said Section 12 into a number of lots bordering on the highway which runs across it from northwest to southeast. The map showing the platting of the lots is in the record. The surveyor placed markers at the northeast and northwest corners of the forty and some time after the survey, W. J. Rollan erected a two-strand barbed wire fence between the two corners. The disputed land lies between the fence and the Creek. It is low, swampy land, is not in cultivation, and has no improvements on it other than the fence. The fence is nailed to a tree at least in part.

The testimony for complainants tended to show that the Booth Place had been in possession of Daniel Booth who lived on it as far back as 1900; that his occupancy extended to the creek; that he cut firewood on the disputed strip; that his children used a swimming hole in the creek bordering the disputed strip; that no person went to the swimming hole except by invitation of the Booths; that complainants' immediate grantors were daughters of Daniel Booth and inherited the land under the will of their mother who died in 1931; that the Booth Place was conveyed to complainants by their aforesaid grantors in 1945; that complainants went into possession and within one or two years after 1945 ran fences from the creek so as to enclose the disputed strip in their pasture and to use the creek as one side of their pasture; that they sold the timber off the entire place, including the disputed strip, in 1947 and the purchaser cut the timber, although respondent W. J. Rollan objected; that complainants have had cattle in the pasture which included the disputed strip for 6 or 7 years; that complainants posted "no trespassing notices" the first year after they bought the land; and that complainants knew nothing of the fence erected by W. J. Rollan until after he had built it.

W. J. Rollan, when asked how often he visited "this property," replied "I don't know, in the Fall of the year I would go hunting and I would go over it and cut some timber and bring back," and that he did this "every two or three years." We do not think there is any other evidence tending to show occupation of the disputed strip by respondents until W. J. Rollan built the fence some time after the survey in March, 1954.

The trial judge heard the witnesses testify and could find from the evidence that complainants were in possession of the disputed strip after 1945 until the fence was erected in 1954, or thereafter, and that respondents did not have any sort of possession until after 1954. The evidence supports a finding that complainants had the older possession and that the possession of respondents since 1954 had not ripened into title by adverse possession.

The rule is that where neither party has the true title, the older possession gives the better right, and such right is not defeated by a subsequent entry and occupation by the opposing claimant until it has ripened into title by adverse possession. Reddick v. Long, 124 Ala. 260, 27 So. 402; Gilchrist v. Atchison, 168 Ala. 215, 52 So. 955; see also Lathem v. Lee, 249 Ala. 532, 535, 32 So.2d 211. In the instant case, complainants had shown a prior possession in themselves and respondents' subsequent entry and occupancy had not ripened into title. The court was, therefore, justified in finding that complainants had the better right to the disputed strip although complainants' occupancy of it may not have been precisely shown to have been of ten years' duration.

The evidence tends to show also that Daniel Booth, one of complainants' predecessors, exercised acts of possession over the disputed strip as far back as 1900, and complainants are entitled to the benefit of the rule that when possession is once shown it is presumed to continue until or unless the contrary is shown. Alabama State Land Company v. Matthews, 168 Ala. 200, 53 So. 174; Sisson v. Swift, 243 Ala. 289, 9 So.2d 891. Nothing contrary to the presumption of continued possession by Booth and his successors is shown.

4. Appellants state in brief that the affidavit dated November 5, 1951, wherein affirmation is made that complainants and those under whom they claim have been in possession of the Booth Place for thirty-five years, is incompetent evidence and should not be considered under the holding in Stewart Brothers v. Ransom, 204 Ala. 589, 87 So. 89. We have not considered the affidavit as evidence and our decision is not based in anywise on the affidavit. We have not found in the record any objection to admission of the affidavit in evidence. Under Act No. 101, approved June 8, 1943, General Acts 1943, page 105, which appears in 1955 Cumulative Pocket Parts, Code 1940, as Title 7, § 372(1), admission of the affidavit as aforesaid was not error to reverse. Under the statute we presume that the trial judge considered only that evidence which was relevant, material, competent, and legal. Dougherty v. Hood, 262 Ala. 311, 78 So.2d 324.

5. Appellants insist that the decree should be reversed because the record shows that the lands of complainants are subject to a mortage to the Federal Land Bank, executed by complainants and dated November 14, 1951, which is outstanding and unpaid according to the admission of one of the complainants on cross-examination by appellants, and the mortgagee is not a party to this suit.

The mortgage was offered in evidence by appellants. We do not find any objection to nonjoinder of the mortgagee raised in the trial court. Apparently, nonjoinder of the mortgagee is objected to for the first time on this appeal.

The general rule in a court of equity is that all persons having a material interest, legal or equitable, in the subject matter of a suit, must be made parties, either as plaintiffs or defendants. The rule proceeds on the principle that no man's rights should be controverted in a court of justice unless he has full opportunity to appear and vindicate them; and further, that complete justice may be done and future litigation avoided, the performance of the decree being safe, because of the presence in court of all parties who have an interest in its subject matter. The general rule further is that if a bill is defective for the want of proper parties, advantage should be taken of the defect by plea, demurrer, or answer, and if not so taken, the objection is waived. The rule is subject to the exception that if a cause cannot be properly disposed of, on the merits, without the presence of the absent parties, the objection may be made at the hearing, or on error, it may be taken by the court ex mero motu. Prout v. Hoge, 57 Ala. 28. See also: Batre v. Auze's Heirs, 5 Ala. 173; McMaken v. McMaken, 18 Ala. 576; Woodward v. Wood, 19 Ala. 213; McCully v. Chapman, 58 Ala. 325; Watson v. Oates, 58 Ala. 647; Amann v. Burke, 237 Ala. 380, 186 So. 769; Matthews v. Matthews, 247 Ala. 472, 25 So. 2d 259; Garrison v. Kelly, 257 Ala. 105, 57 So.2d 345.

We are of opinion that under the foregoing rules, the mortgagee is such a necessary or indispensable party as that final decree ought not to be rendered in a suit to settle a disputed boundary without making the mortgagee a party to the suit.

In a suit to settle a disputed boundary, this court said: "The Court must have before it title to the property which is sought to be affected by the decree." Easterling v. Cleckler, 269 Ala. 660, 115 So.2d 516, 517. Other courts have said that in a boundary suit necessary parties included: all persons who have a direct interest in the

**646**

result of the proceedings, Atkins v. Hatton, (Eng.), 2 Anstr. 386, 145 Reprint 911; Watkins v. Childs, 80 Vt. 99, 66 A. 805; Hazard Coal Corp. v. Getaz, 234 Ky. 817, 29 S.W.2d 573; McDonald v. Humble Oil & Refining Co., Tex.Civ.App., 78 S.W.2d 1068; Cady v. Kerr, 11 Wash.2d 1, 118 P.2d 182, 137 A. L.R. 713; tenants in common, Pope v. Melone, 2 A.K.Marsh. 239, 9 Ky. 239; and remaindermen and reversioners, Bayley v. Best, 5 Eng.Ch. 659, 39 Reprint 253.

For the omission of the mortgagee as a party the decree must be reversed and the cause remanded. As was decided in Prout v. Hoge, supra, the appellants, not having made this objection in the circuit court, are in fault and must pay one-half the costs of this appeal and the appellees the remainder.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.