Mary Sue Engle IRVIN,
Plaintiff-Appellant,
Cross-Appellee,

v.

GRIFFIN CORPORATION, A Kansas Corporation, a division or subsidiary of the defendant, Griffin Products; Griffin Products, Inc., a Canada Corporation; and Howard Brothers, a corporation, a division of the Wick Corporation, a Delaware Corporation, d/b/a Howard Brothers Discount Store, Defendants-Appellees,

Roper Corporation, a Delaware Corporation, Defendant-Appellee, Cross-Appellant.

No. 85-7619.

United States Court of Appeals, Eleventh Circuit.

Jan. 26, 1987.

Rehearing and Rehearing En Banc Denied March 6, 1987.

Stephen D. Heninger, Hare, Wynn, Newell & Newton, Birmingham, Ala., for Irvin.

Alan T. Rogers, Balch & Bingham, Birmingham, Ala., for Griffin Corp.

Jack B. Porterfield, Jr., Birmingham, Ala., for Howard Bros.

Eugene P. Stutts, Sadler, Sullivan, Sharp & Stutts, Birmingham, Ala., for Roper Corp.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judges.

Corrected January 28, 1987.

TUTTLE, Senior Circuit Judge:

The appellant, Mary Sue Engle Irvin, appeals from a summary judgment dismissal of her products liability lawsuit against the appellees, Griffin Corporation and Roper Corporation, for injuries she sustained in a motorcycle accident while wearing a motorcycle helmet allegedly manufactured and distributed by the defendants.

## FACTS

On February 5, 1982, the plaintiff was seriously injured in a motorcycle automobile collision in Marshall County, Alabama, while riding as a passenger on a motorcycle being operated by her husband. The driver of the automobile, which collided with the appellant's motorcycle, Z.D. Burgett, and his insurance carrier, Alabama Farm Bureau Insurance Carrier, offered to settle with the appellant. The appellant accepted $10,000 from the insured which was the maximum amount of his $10,000 insurance policy. In so doing, the appellant executed a form which was unmistakably in the form of a general release of liability. The release provided in part:

[Mary Irvin] forever discharges Z.D. Burgett and Alabama Farm Bureau Insurance Cos., Inc. heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable, or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability from any and all claims, demands, damages, actions, causes of action or suits or any kind or nature whatsoever and particularly on account of all injuries known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the fifth day of February, 1982 at or near Douglas, Alabama.

Undersigned hereby declares that the terms of the settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise, adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages abovementioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident by the undersigned.

This release was witnessed by the appellant's lawyer.

After executing the release, the plaintiff then filed a products liability action against the various defendants alleging that the helmet she was wearing at the time of the collision was defective in both design and manufacture. Extensive discovery between the parties subsequently followed. The appellant, then without notice to the named defendants in the products liability action, sought a reformation of the general release by petitioning the circuit court for Marshall County. The petition alleged that the release signed by Mary Sue Engle Irvin was intended as a *pro tanto* release and not a general release as the form indicated. The Alabama court conducted a hearing on this petition for reformation and entered judgment reforming the release on May 11, 1984 as a *pro tanto* rather than a general release. The circuit court found that the parties had intended to effect a release only of Z.D. Burgett and his insurer from liability. Neither of the appellees was made a party to the reformation suit or personally appeared to contest the reformation of the release. However, in the products liability action in the district court below, the appellees moved for summary judgment, alleging that the original release executed by the appellant was a general release, which operated as a bar to any further proceedings against any tortfeasors, and secondly, that the reformation was improper because none of the defendants was made a party to or given notice of the reformation proceeding. The district court then refused to give judicial recognition to the Alabama circuit court's reformation of the release before it. It held that the release executed by the plaintiff was unambiguous and would be given effect according to the intentions of the parties to

be judged from what appeared within the four corners of the instrument. The court held that the defendants herein were beneficiaries of the general release executed by the plaintiff and for the circuit court to conclude their rights by a judgment of reformation in a suit to which the defendants were not made parties and of which they had no notice was, according to the court, offensive to the notions of equity and good conscience and the reformed release was therefore inadmissible in derogation of the general release.

For reasons set forth below, we reverse the judgment of the district court and remand for further proceedings.

## DISCUSSION

 Under Alabama law, an injured party's execution of a general release arising from a tort claim operates as a bar to any other potential claim of the party arising from the same tort. The general release operates in favor of other alleged tortfeasors and releases them from liability. This is simply a reflection of the old common law rule, that one who accepts payments from one tortfeasor and executes a release, which, in express terms, releases "any and all persons" is held to have discharged both the payer party as well as other tortfeasors not party to the release agreement. *Thompson v. N.C. St. L. Railway*, 49 So. 340 (Ala.1909); *Wright v. McCord*, 88 So. 150 (Ala.1922). However, the common law rule has been modified by statute and a release executed in writing in a general form as was the case below, does not *ipso facto*, discharge all other potential parties from liability. By statute, the Legislature has provided for an "intention of the party's" test. Alabama has codified the general rule regarding release as follows:

All receipts, releases and discharges in writing, whether of debt or record, a contract under seal or otherwise, must have effect according to the intention of the parties.

Section 12–21–109, Code of Alabama (1975). The major substantive change in the common law rule was that of modifying the law regarding settlements or releases, and changing it according to the law of contracts, that is, that the release must be given effect according to the intentions of the parties. Thus, under Alabama law, the common law rule on the subject of general releases has been modified by the intention of the party standard of contract law. In so doing, courts have recognized the validity of both *pro tanto* releases and general releases. In the instant case, the appellant sought a reformation of the release executed between her and the insured, Z.D. Burgett, and his insurance company, to effect the true intention of the parties to execute a *pro tanto* release only, releasing the parties to the agreement from liability. The reformation of the release was sought pursuant to § 8–1–2 of the Alabama Code of 1975, which provides that:

When through fraud, a mutual mistake of the parties or mistake of one party which the other at the time knew or suspected a written contract does not truly express the intention of the parties, it may be revised by the court on the application of the parties aggrieved *so as to express that intention, so as it can be done without prejudice to the rights acquired by third persons in good faith and for value.* (Emphasis added.)

The circuit court of Marshall County, in granting the appellant's petition, found that it was the intent of all the parties concerned to release only Z.D. Burgett and Alabama Farm Bureau Insurance Company and that no other entity was involved in the compromise and release; that the parties executed the release on a general form although not intending a general release of all parties. The circuit court held that they intended to execute only a *pro tanto* release. Clearly, Alabama law provides for a *pro tanto* release. In *Steenhuis v. Holland*, 217 Ala. 105, 115 So. 2 (1927), the court construed Alabama statute § 12–21–109 as providing for the right of an injured party to accept satisfaction in part from one tortfeasor, release him, and then proceed against the other. Moreover, there

need not be a reservation of a right to pursue other tortfeasors expressed in the *pro tanto* release. The court noted:

> Such reservation is not essential, nor need the release take the form of a covenant not to sue. The true inquiry is, that the party's intend to limit release to the parties named, with no intent that the cause of action be satisfied in full.

■ It is clear that under Alabama Code § 12–21–109, a release, which has as its intent the discharge from liability of only named parties to the release, need not discharge all potential parties then or later known.

In the instant case, the appellant Mary Irvin, sought relief in the appropriate state court seeking a reformation of the general release and it was granted. The question therefore, in this case, is whether the reformation of the release was invalid because Ms. Irvin failed to give notice to the other alleged tortfeasors who were not parties to the original release. The answer to the question depends upon whether notice of the reformation proceeding was required under state law.

■ Alabama law provides that a written contract which does not express the true intentions of the parties, may be reformed only so far as it can be done without prejudice to the rights *acquired by third persons in good faith and for value.* Ala.Code § 8–1–2 (1975). Without questioning the good faith of appellees, it is clear that they have paid nothing by way of value for the "benefits" which they received fortuitously from the general release.

The appellees, Roper and Griffin Corporation, contend that since they were necessary parties to the reformation of the release, and were not notified of the action, the reformation proceeding lacked proper notice, and therefore, a federal district court, sitting in a diversity lawsuit cannot recognize a state court judgment that lacked proper notice to the necessary parties. They argue that since the reformation proceeding was started after the products liability action had been filed in federal court and appearances thereto made, the reformation proceeding in state court suffered a jurisdictional defect, because they were not notified of the action, as proper parties to it. The appellees assert that they were necessary parties because they had a beneficial interest in the original release once it was executed by the plaintiffs. According to the appellees, the plain language of the release discharges "all other persons, firms or corporations liable, or who might be claimed to be liable from any and all claims on account of all injuries known and unknown which have resulted or may in the future result from the accident...." They contend that Mrs. Irvin's release is unambiguous in meaning and is supported by consideration. They point to the fact that under Alabama law a petition for reformation of the instrument is a suit in equity, and equity demands that all persons who will be affected by the decision be notified of the action. They cite the general rule in equity that all persons having a material interest, legal or equitable, in the subject matter of the suit must be made parties to the proceedings. *Rollan v. Posey,* 271 Ala. 640, 645, 126 So.2d 464, 468 (1961). Thus, "all persons who are legally or beneficially interested in the subject matter of a suit in equity, are necessary parties." *Leigeber v. Scott,* 263 Ala. 507, 508, 83 So.2d 246, 247 (1955).

However, both cases cited by the appellees involve claims by parties to the rights to title to real property. *Posey* involved the claims by a mortgagee, as a necessary party in an equity action to settle a boundary dispute of land. The Alabama Court of Appeals found that the mortgagee was a necessary or indispensable party to that case. *Posey* was an action in equity which did not involve a suit for reformation of an instrument. Moreover, in *Leigeber v. Scott,* the Supreme Court of Alabama found that a decedent's heirs at law were necessary parties in a suit for reformation or the cancellation of a deed involving the decedent's conveyance of property. The court cited the rule that those persons having a legal or equitable interest in the

subject matter of a suit for reformation of an instrument must be made parties to the proceeding, but in so doing, cited only Corpus Juris Secundum on Reformation of Instruments. 83 So.2d at 247, citing 76 C.J.S. Subsequent to *Scott*, the Supreme Court of Alabama addressed the subject of reformation of instruments in writing, as it appeared by statute. In *American Liberty Ins. Co. of Birmingham v. Leonard*, 270 Ala. 17, 115 So.2d 470 (1959), the court relied upon Section 59, Title 9 of the Code of Alabama (1940), to address the subject of the revision of a fire insurance contract on grounds of the unilateral mistake of the parties. Although refusing to find that reformation was proper in that case, the Supreme Court of Alabama held that a court of equity had the power to reform or revise a written contract only when the requirements of the statute were met. According to the court, those terms were clear and unambiguous. That section, which is now § 8-1-2 of the 1975 Code, provides that an instrument may be revised by a court "so long as it can be done without prejudice to the rights acquired by third persons in good faith and for value." The court held the statute was merely declaratory of the established principle applicable to the reformation of instruments.

The statute requires either a mutual mistake of both parties or a fraud on the part of one of the parties or a unilateral mistake of one party which the other party at the time knew or suspected. In addition to alternate grounds, for equitable relief, there is the requirement that as a result of one of the alternate circumstances the written contract "does not truly express the intention of the parties."

*Id.* 115 So.2d at 473.

■ It is clear that the statute which is the predecessor of the current statute, is the sole means by which a court is to adjudicate the interests of parties in the reformation of a written contract such as a release. The right of third parties, whether as beneficiaries or actually parties to the reformation of a contract, are addressed by the statute. They are protected if their interests *were acquired by good faith and for value.* Thus, an equity court may reform an instrument in writing, so long as it does not affect the rights of third parties who satisfy the statute's good faith and value requirements. The protection of their interests is clearly a limitation upon the court's power to grant a reformation of an instrument. We construe the statute as saying that if such persons paid value for their interest they are proper parties to a reformation suit, but if they did not, they have no interest to protect and are not proper parties.

Here, appellees paid nothing for the benefit from the general release that would permit them to protect their "claimed" rights at a reformation proceeding. The circuit court was free to reform the original release between the parties, without notice to appellees since they had no rights "acquired ... for value."

Our conclusion is supported by *Conley v. Harris J. Whelchel Co.*, 410 So.2d 14 (Ala. 1982), which upheld the enforcement of a general release, against the plaintiff's claim that it was only intended as a *pro tanto* settlement, and not a bar to any future litigation involving other unnamed defendants. However, without seeking to reform the release, the plaintiffs attempted to avoid its effect on the grounds that it did not reflect the true intention of the parties. In affirming the trial court's granting of summary judgment, the court stated that "in the absence of fraud, a release supported by valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged from the four corners of the instrument and that parol evidence is inadmissible to impeach or vary its terms." However, the court noted that the plaintiff could have sought the remedy of reformation. The court stated:

The evidence ... shows that appellant could have attempted to avoid or rescind the entire release on the grounds of mutual mistake, fraud or misrepresentation. Furthermore, the appellant could have

requested reformation of the release, pursuant to Code of 1975, Section 8–1–2, to express the true intention of the parties. However, the appellant chose none of the remedies. She chose partial revocation. . . .

In the case at hand, the appellant Mary Sue Engle Irvin, did just what the Supreme Court of Alabama suggested be done. She petitioned for reformation of the release in the circuit court of Marshall County, Alabama and obtained an instrument reflecting the true intention of the parties, a *pro tanto* release. *Conley*, therefore, supports the appellant's claim here.

We conclude, that neither Roper Corporation nor Griffin Corporation, appellees herein, was entitled to notice of the reformation proceeding under Alabama law. They were neither necessary nor interested parties to a reformation of the instrument to which they were neither parties nor intended beneficiaries of the release in question and for such benefits as they claimed they had given nothing of value.

Lastly, the appellee, Roper Corporation, cross-appeals the district court's denial of the summary judgment motion, removing the appellee as one of the defendants in the products liability action. The cross-appellant claims that it had no involvement in the subject of this products liability lawsuit, by virtue of its sale to Griffin Corporation, prior to the manufacture of the motorcycle helmet in question. It claims that it was neither a manufacturer, supplier, or retailer of the helmet and that its only involvement in the lawsuit comes by way of a bulk sale of manufacturing machinery and equipment to Griffin Corporation, approximately six months prior to the manufacture of the helmet, which is the subject of the lawsuit.

The district court, addressed cross-appellant Roper Corporation's claims that it was not liable as a matter of law and denied its motion for summary judgment. We are not inclined to reverse the district court's ruling on this matter that there was not the absence of genuine issues of fact thereby precluding a summary judgment. A dis-

trict court judge has wide discretion in denying a motion for summary judgment. For a discussion of the wider discretion of the trial court to deny a motion for summary judgment, we quote from Professor Charles Allen Wright:

> Despite all that may be shown, the court always has the power to deny summary judgment if, in its sound judgment it believes for any reason that the fair and just course is to proceed to trial rather than to resolve the case on a motion.

Wright, *Federal Courts*, 495 (3d ed. 1976). *See also, Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347.

We, therefore, remand the case to the district court reversing the district court's granting of summary judgment as to the appellees Roper and Griffin Corporation and affirming the district court's denial of summary judgment as to the cross-appellant Roper Corporation.

REVERSED in part, AFFIRMED in part.

TJOFLAT, Circuit Judge, dissenting:

The issue in this case is whether, under Alabama law, a judgment reforming a general release is binding on a third party who was discharged by the release but was not a party to the reformation proceeding. The majority holds that the third party is bound by the judgment of reformation if he did not obtain his discharge under the general release "for value" within the meaning of section 8–1–2 of the Alabama Code. For reasons discussed below, I respectfully dissent.

I.

The appellant, Mary Sue Engle Irvin, was seriously injured when the motorcycle on which she was riding collided with an automobile driven by Z.D. Burgett. On June 21, 1982, appellant entered into a settlement with Burgett and his insurance carrier, Alabama Farm Bureau Insurance Co. (the insurer). Appellant received $10,-000—the maximum coverage of Burgett's insurance policy—from Burgett and his in-

surer. In exchange, she executed a general release, which included the following language:

> For the Sole Consideration of [$10,000] ... the undersigned hereby releases and forever discharges Z.D. Burgett and [the insurer,] heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable, or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever and particularly on account of all injuries known and unknown, both to person and property, which have resulted or may in the future develop from [the accident in question].

Appellant signed this release on the advice of and in the presence of an attorney, John Cole.

On February 4, 1983, appellant filed a complaint in federal district court, contending that her injuries in the motorcycle accident were caused by the manufacture, design, and sale of a defective helmet, which she was wearing when the accident occurred. The defendants named in the complaint were Griffin Corp.; Griffin Products, Inc.; Roper Corp.; and Howard Brothers, Inc. (collectively referred to as appellees). Burgett and his insurer were not named as parties in this products liability action. Knowing that her claim was barred by the general release she executed in June 1982 and that appellees would obtain a dismissal of her suit once they discovered that she had executed it, appellant took steps to extinguish appellees' rights under the re-

lease. On January 13, 1984, she filed a "Petition for Reformation" in the Circuit Court of Marshall County, Alabama, requesting the court to reform the release so that it would operate only as a partial, or pro tanto, release of Burgett and his insurer, rather than as a general release of all tortfeasors. Appellant named none of the appellees as parties to her reformation proceeding, and they were not subsequently joined as parties on the motion of Burgett, his insurer, or the court, acting on its own initiative. In short, appellees had no notice of the proceeding during its pendency; nor did the judge who was presiding over appellant's products liability action in the district court. The state circuit court gave appellant the reformation she sought, finding that the parties to the release, i.e., appellant, Burgett, and his insurer, intended to execute a partial, pro tanto release, not a general release.[1]

Subsequently, the appellees learned that appellant had executed the general release in question and had obtained the reformation thereof in state court. Appellees, claiming that the general release, as executed, foreclosed appellant's claims against them and that the state court reformation was not binding on them, moved the district court for summary judgment.[2]

On September 16, 1985, the district court conducted a hearing on appellees' motions for summary judgment. Although this hearing apparently was not transcribed, we are able to reconstruct the proceeding from appellees' motions for summary judgment, the parties' memoranda to the court concerning the motions, and the court's dispositive order. Appellant opposed the granting of summary judgment on two indepen-

---

1. The record before us does not contain copies of the state court reformation judgment or any of the pleadings, testimony, or documentary evidence on which the judgment was based.

2. The issue of the general release was presented to the district court in an unorthodox fashion. The Federal Rules of Civil Procedure provide that a defendant who contends that the plaintiff's claim is foreclosed by a release must present his contention in the form of an affirmative defense. See Fed.R.Civ.P. 8(c). The appellees, however, did not move the court for leave to amend their answers to plead the general release as an affirmative defense. Instead, they pled the release in their motions for summary judgment. Appellant chose to respond to this method of pleading an affirmative defense by informing the district court, during argument on appellees' motions for summary judgment, that she had obtained the reformation of the general release in state court and that the reformed release did not bar her claims against appellees.

dent grounds: (1) although appellant executed a general release in appellees' favor, the state court judgment of reformation had extinguished their rights thereunder; and (2) even if appellees were not bound by the state court judgment, there existed a material question of fact, which a jury had to decide, as to whether the general release reflected the intention of the parties to the release, that is, whether the parties intended to execute a partial release in favor of Burgett and his insurer only or a general release in favor of all tortfeasors.

The district court granted appellees' motions for summary judgment. It held that appellees were not bound by the state court judgment and that the general release, which therefore remained in effect as to appellees, barred appellant's claims against them. In this appeal, appellant challenges the district court's ruling.

## II.

### A.

This diversity action is governed by Alabama law. The general rule in effect in Alabama when appellant executed the original release provided as follows: "All receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, must have effect according to the intention of the parties thereto." Ala.Code § 12–21–109 (1975).[3] By accepting payment from one tortfeasor and executing a general release, "a party releases all tortfeasors against whom a cause of action is not specifically reserved, regardless of whether those tortfeasors are parties to the release or are expressly mentioned therein." *Baker v. Ball*, 473 So.2d 1031, 1035 (Ala.1985) (citing *Johnston v. Bridges*, 288 Ala. 156, 258 So.2d 866, *cert. denied*, 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972)); *see also Thompson v. Nashville, C. & St. L. Ry.*, 160 Ala. 590, 49 So. 340, 341 (1909). It is undisputed that the original release executed by the appel-

lant was a general release. Consequently, the appellees were released, by operation of law, from all of appellant's claims arising from her motorcycle accident.

### B.

Appellant contends that appellees were the unintended beneficiaries of the general release and that appellees were estopped from pleading the release because their rights were terminated by the state court judgment of reformation. In effect, the appellant asks us to give collateral estoppel effect to the state court's judgment, even though the appellees were not parties to the state proceeding and had no notice of it.

In determining whether to give preclusive effect to a state court's judgment, a federal court is obligated to apply the preclusion rules of the state in which the judgment was rendered. *See* 28 U.S.C. § 1738 (1982) ("Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."); *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Curry v. Baker*, 802 F.2d 1302, 1309–10 (11th Cir. 1986); *see also Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1473 (11th Cir.1985) ("Under the Full Faith and Credit Act, a federal court is required to give res judicata effect to state court judgments only to the extent that the courts of the state in which the judgment was entered would do so.") (citation omitted). The state preclusion rules are applicable, however, only if they comport with the requirements of due process. *Hansberry v. Lee*, 311 U.S. 32, 40–41, 61 S.Ct. 115, 117–18, 85 L.Ed. 22 (1940) (judgment rendered in violation of due process is not

---

**3.** This provision was amended in 1985 and now provides as follows: "All receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, and

all judgments entered pursuant to pro tanto settlements, must have effect according to their terms and the intentions of the parties thereto." Ala.Code § 12–21–109 (Supp.1986).

entitled to full faith and credit). It is well settled that due process is denied when a litigant who was not a party to, or whose interests were not represented in,[4] the earlier proceeding is collaterally estopped from litigating an issue resolved in the prior proceeding. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Hansberry,* 311 U.S. at 40–41, 61 S.Ct. at 117–18.

Under Alabama law, collateral estoppel can be invoked in the following circumstances:

> Collateral estoppel operates where the subsequent suit *between the same parties* is not on the same cause of action. Requirements for collateral estoppel to operate are (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment. If these elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit.

*Leverette v. Leverette,* 479 So.2d 1229, 1235 (Ala.1985) (emphasis added) (quoting *Wheeler v. First Alabama Bank of Birmingham,* 364 So.2d 1190, 1199 (Ala.1978)). Collateral estoppel can also be invoked

against a non-party to the previous lawsuit, but only if he "has an interest sufficiently close to the matter litigated and [has] had an adequate opportunity to litigate the issue in the prior proceeding." *Owen v. Miller,* 414 So.2d 889, 891 (Ala.1981); *see also Mitchell v. Austin,* 266 Ala. 128, 94 So.2d 391, 392–93 (1957) (person with mutual or successive interest in the same property may be bound by a prior adjudication concerning that property); *Moody v. Moody,* 339 So.2d 1030, 1034 (Ala.Civ.App.) (because he was present, gave testimony, and exerted control over the litigation, non-party was sufficiently interested and involved in prior proceeding to be bound thereby), *cert. denied,* 339 So.2d 1035 (Ala.1976). In sum, Alabama precedent makes it clear that the doctrine of collateral estoppel cannot be asserted against one who was neither a party nor "privy" to the previous suit. *See Leverette,* 479 So.2d at 1235; *AAA Equipment & Rental, Inc. v. Bailey,* 384 So.2d 107 (Ala.1980) (citations omitted).

In this case, appellees were not parties to the state court reformation proceeding; they had no opportunity to contest appellant's claim that the original release did not reflect the intent of the parties. Further, appellees were not in privity with Burgett and his insurer; therefore, the reformation judgment could not bind them by operation of law. Finally, appellees' interests [5] were

---

**4.** This general rule does not apply, for example, when a party's interests were represented in a prior class action. *See Hansberry,* 311 U.S. at 41, 61 S.Ct. at 118.

**5.** Appellant concedes, as she must, that appellees had valuable rights under the general release and therefore a substantial interest in the outcome of her suit for reformation. She tacitly admitted this by repairing to the state court after instituting her damage action in the district court; unless she obtained the reformation of the general release she had executed more than 18 months earlier, her claims against appellees would have been barred.

By bringing suit in the district court on claims that had been extinguished through the execution of a general release, appellant's attorney may have acted in violation of Rule 11 of the Federal Rules of Civil Procedure, which provides in relevant part:

> The signature of an attorney or party constitutes a certificate by him that he has read the

pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

One might argue that Rule 11 would countenance the filing of a released claim because the court would not treat the claim as released unless the defendant pled and proved that the claim had been released, as an affirmative defense pursuant to Fed.R.Civ.P. 8(c). If the defendant pled the release as a defense, then the plaintiff could seek to avoid the effect of the release by claiming, as appellant did in state court, that the release should be reformed so as not to discharge the defendant. Fed.R.Civ.P. 8(d) ("Averments in a pleading to which no

not represented by Burgett and his insurer. Burgett and his insurer had an interest in assuring that the release would free them of liability, but they had little or no incentive to insure that other tortfeasors—the appellees—be released as well.[6]

The appellees cannot be bound by the state court's reformation judgment, because they had no opportunity to participate in the reformation proceeding. The majority, however, holds that the appellees should be bound by the state court's determination, relying on the following provision of the Alabama Code:

> When, through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value.

Ala.Code § 8-1-2 (1975). I cannot read this provision of substantive law as a complete bar to appellees' right to have their "day in court" simply because they allegedly did not acquire their rights "for value."[7] At a minimum, appellees had the

---

responsive pleading is required [e.g., an answer to a complaint] or permitted shall be taken as denied or *avoided.*") (emphasis added).

In this case, appellant's counsel pursued a different course: he attempted to avoid appellees' affirmative defense without giving them an opportunity to be heard. In my view, such conduct violated the spirit, if not the letter, of Rule 11. Moreover, by not informing the district court that he would seek to avoid appellees' anticipated release defense in state court—rather than in the district court in accordance with the Rules of Civil Procedure and common sense notions of fairness—appellant's counsel ignored his ethical responsibilities to the district court and to his adversaries.

6. There would be some community of interest among the appellees, Burgett, and his insurer if appellant had sued Burgett and his insurer to set aside the release altogether so that she could sue all tortfeasors. In this case, however, there was no dispute among the participants in the reformation action concerning the validity of the release as to Burgett and his insurer. Thus, Burgett and his insurer did not have a strong interest in resisting appellant's claim for reformation.

7. The meaning of the "for value" language is also somewhat unclear. Another provision of the Alabama Code provides that "[a]n obligation is extinguished by a release therefrom given to the debtor by the creditor upon a new consideration or in writing with or without new consideration." Ala.Code § 8-1-23 (1975). If "value" for purposes of § 8-1-2 is defined in terms of "consideration" under § 8-1-23, then the appellees' rights cannot be prejudiced without their presence and participation in the reformation proceeding, because the release was in writing.

In addition, Alabama case law recognizes that "consideration for a release moving from a third person on behalf of the releasee to the releasor ... is as adequate as a consideration moving directly from the releasee to the relea-

sor." *Baker v. Ball,* 473 So.2d 1031, 1035 (Ala. 1985) (quoting *Johnston v. Bridges,* 288 Ala. 156, 162, 258 So.2d 866, 872, *cert. denied,* 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972)). Thus, the $10,000 paid by Burgett and his insurer to appellant can serve as consideration for appellant's general release of all tortfeasors, including appellees. The Supreme Court of Alabama reached a similar result in *Baker,* 473 So.2d at 1035. The Bakers sued Mannich Realtors, "alleging that Mannich had negligently failed to ensure restoration of their Veterans Administration loan eligibility and to ensure their release from mortgage liability." *Id.* at 1033. Mannich paid $10,036.50 to the Bakers and obtained from them a release and indemnity agreement. The release discharged Mannich, other named parties, and "any and all other persons, firms, corporations and parties whatever, jointly and severally, of and from any and all judgments, claims, demands, actions, causes of action, suits, costs, damages, expenses, compensation and liabilities of every kind, character and description, either direct or consequential, at law or in equity." *Id.* at 1034 (emphasis omitted). Subsequently, the Bakers brought a pro se complaint against Ball, an attorney who represented the Bakers in another lawsuit arising out of the same series of transactions. After Ball pled the Mannich release, the Bakers sought to have the release rescinded, revised, or clarified. For reasons not relevant to this case, the Supreme Court of Alabama held that the Bakers' claim for rescission was barred. *Id.* at 1035. It also held that the release operated as a general release of all tortfeasors, including Ball. *Id.* Finally, the court held that "the release of Ball was supported by $10,036.50 as consideration, *regardless of the fact that Mannich, not Ball,* actually paid it." *Id.* In the case before us, the $10,000 payment made by Burgett and his insurer to appellant served as consideration to support the release of appellees, and arguably constituted "value" under § 8-1-2 of the Alabama Code.

right under Alabama law to participate in the reformation proceeding, to litigate the issue of whether they acquired their rights "in good faith and for value," and to challenge appellant's claim that the general release she executed was the result of fraud or of mutual mistake. By denying appellees the opportunity to litigate these issues, the majority in effect holds that the general release gave them no enforceable rights. If third-party rights conferred by a general release can be extinguished at any time without notice to the third party, it logically follows that a general release confers no third-party rights. Under the majority's analysis, appellant, Burgett, and his insurer could have modified the general release without a judicial imprimatur.

Consequently, I do not share the majority's view that appellees are bound by the state court's judgment and that appellees' rights, which they obtained by operation of law, can be extinguished without notice and a hearing. Its view is not supported by Alabama's collateral estoppel rules. Further, if Alabama law did permit the reformation judgment to bind non-parties, serious due process questions would be raised. *See, e.g., Parklane Hosiery,* 439 U.S. at 327 n. 7, 99 S.Ct. at 649 n. 7. I would affirm the district court's refusal to give the reformation judgment binding effect against appellees.

I am also troubled by the majority's disposition of this appeal. The majority holds not only that the district court erred in granting summary judgment in favor of appellees, but also that the reformation is valid and binding against appellees as a matter of law. This holding will prevent appellees from claiming in the district court, on remand, that they should not be bound by the state court judgment, because it was obtained by fraud or collusion. Standing alone, the mere fact that appellant's petition for reformation was not filed until more than eighteen months after the execution of the release permits the inference that the general release executed by appellant was *not* obtained through fraud,

mutual mistake, or a unilateral mistake known or suspected by Burgett and his insurer. This inference is reinforced by appellant's tactic of resorting to state court, without notice to appellees, to avoid the effect of the release and by the willingness of her attorney to incur a possible sanction under Rule 11 of the Federal Rules of Civil Procedure for filing claims in the district court that were clearly barred.[8]

### C.

Because I believe the state reformation proceeding should not be given binding effect against appellees, I shall also address the merits of appellant's contention that the district court erred in granting summary judgment to appellees because there was a genuine issue of fact concerning whether the release reflected the intent of the parties, i.e., whether the parties to the release intended to execute a partial, rather than a general, release.

As noted previously, a release must be given effect according to the intent of the parties, Ala.Code § 12–21–109 (1975), and any contract may be revised if it does not reflect the intent of the parties because of fraud, mutual mistake, or a mistake of one party that was known or suspected by the other party, Ala.Code § 8–1–2 (1975). The party seeking reformation must prove by clear and convincing evidence that the contract does not express the intent of the parties and must also show that reformation will not prejudice the rights of innocent third parties. *Clemons v. Mallett,* 445 So.2d 276, 279 (Ala.1984).

The language of the release in this case clearly discharges Burgett, the Alabama Farm Bureau, and "all other persons, firms or corporations liable, or who might be claimed to be liable." Moreover, the release, which is only one page long, contains the following language:

Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of

---

**8.** *See supra* note 5.

making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident by the undersigned.

Finally, appellant can hardly claim that she unwittingly signed the release without understanding its ramifications, because her attorney, John Cole, negotiated the settlement, was aware of the terms of the release, and even signed the release as a witness.

Under Alabama law, unless there is a showing of fraud, "a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach it or vary its terms." *Baker v. Ball*, 473 So.2d 1031, 1035 (Ala.1985) (quoting *Miles v. Barrett*, 233 Ala. 293, 134 So. 661 (1931)). There is no evidence in the record to support a claim that the release was induced by fraud, and it is undisputed that the release was supported by consideration. The Supreme Court of Alabama has held in several cases that language in releases remarkably similar to the language of the release in this case must be interpreted to grant a general discharge to all tortfeasors. *See, e.g., Baker*, 473 So.2d at 1035; *Finley v. Liberty Mutual Insurance Co.*, 456 So.2d 1065, 1066–67 (Ala.1984); *Conley v. Harry J. Whelchel Co.*, 410 So.2d 14, 15 (Ala.1982).

There is no jurisprudential basis for this court's departure from the settled precedent of the Supreme Court of Alabama in this diversity action. Although the majority's holding may enable appellant to recover damages against parties her original lawyer may imprudently have caused her to release, I suggest that its holding may work mischief. It will serve as an open invitation to lawyers practicing in Alabama to engage in the highly questionable tactic appellant's counsel employed here.

I respectfully dissent.