NEWTON CAMP, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] An indictment concludes properly, if it follows the form prescribed by the statute.

[2.] Manslaughter may be committed by killing a slave.

[3.] That a bill of indictment for manslaughter, charges facts in the body of it which constitute murder, is no ground for arresting the judgment.

Camp vs. The State.

[4.] It is not necessary for the jury to incorporate in their finding the definition of the offence charged in the indictment.

Manslaughter, from Marion county. Tried before Judge WORRILL, March Term, 1858.

Newton Camp was placed upon his trial under an indictment, the language of which was as follows:

" The grand jurors sworn, chosen and selected for Marion county, in the name and behalf of the citizens of Georgia, charge and accuse Newton Camp of the county and State aforesaid, with the offence of manslaughter, for that the said Newton Camp, in the county and State aforesaid, on the twelfth day of June, in the year of our Lord, one thousand eight hundred and fifty-seven, with force and arms and with a certain strap of leather, called a carriage trace, in and upon a certain negro man slave named Willis, the property of James M. Harvey, in the peace of GOD and said State, then and there being, did then and there make an assault, unlawfully, wilfully, feloniously and with malice aforethought, and the said negro man slave Willis, with the carriage trace aforesaid, which he the said Newton Camp then and there had and held in both his right and left hands, in and upon the back and in and upon the shoulders, and the loins of him the said Willis, then and there unlawfully, wilfully, feloniously and of his malice aforethought, did strike and beat, giving to the said Willis, divers wounds of which said wounds, the said Willis, then and there died. And the jurors aforesaid, on their oaths as aforesaid, do say, that he, the said Newton Camp, him the said Willis, then and there, wilfully, unlawfully, feloniously and of his malice aforethought, did kill, contrary to the laws of said State, the good order, peace, and dignity thereof."

The jury returned the following verdict: " We the jury find the defendant guilty of involuntary manslaughter, in the commission of a lawful act, which probably might produce such a consequence in an unlawful manner."

Counsel for defendant then moved in arrest of judgment, on the following grounds :

1st. Because the indictment does not charge that said offence was committed contrary to the Constitution of this State, and the Act of the assembly made in pursuance thereof.

2d. Because the indictment does not charge the defendant with any crime known to and punishable by the laws of this State.

3d. Because said indictment is void, and of no effect in law, as the same does not charge and set forth any offence known to the law.

4th. Because said indictment charges said defendant with being guilty of manslaughter, and the allegation and specification in the same, do not support said charge of manslaughter.

5th. Because the verdict of the jury rendered in said case, does not find the defendant guilty of any offence punishable by the laws of this State.

The Court overruled the motion; whereupon defendant's counsel excepted, and assigns the same as error.

BLANDORD & CRAWFORD; DAVIS & HUDSON; and A. G. PERRYMAN, for plaintiff in error.

Sol. Gen. OLIVER, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

[1.] The first ground in the motion in arrest of judgment, cannot be sustained. The conclusion of the indictment follows the form prescribed by the statute. Besides, it is an exception which goes merely to the form of the indictment, and cannot be sustained in arrest of the judgment of the Court. *Cobb's N. Dig.* 833.

[2.] The argument, in support of the second and third grounds of the motion, is that manslaughter cannot be com-

mitted by killing a slave.   That to kill a slave is either mur-
der or justifiable homicide.   The 19th section of the fourth
Division of the Penal Code answers that argument.   That
section declares, that the killing or maiming of a slave shall
be put on the same footing of criminality as the killing or
maiming of a white person.

[3.] The fourth ground in the motion is substantially, that
the bill of indictment charges the plaintiff in error, with the
offence of manslaughter, when the body of the indictment
makes a case of murder.   The defendant had been arraign-
ed and pleaded to the bill as it was.   He pleaded not guilty.

There is ancient authority for saying that if a grand jury
return a true bill for manslaughter on a bill for murder, it is
void, but the reason assigned for it, is not very satisfactory,
viz : That the grand jury are not to distinguish between mur-
der and manslaughter, for it is only the circumstance of mal-
ice that makes the difference, and that may be implied by the
law without any facts at all.   *Bac. Ab. Indictment, Letter O.*
The same reason would prevent a jury from finding a true
bill for either murder or manslaughter on a bill having two
counts, one charging murder and the other manslaughter,
for they would have to distinguish between them in that
case.

There is an authority as old as the time of Sir Matthew
Hale, that if a bill of indictment be for murder, and the
grand jury ignore it as to murder, but find a true bill for
manslaughter, the words which give to the charge the dis-
tinctive character of murder may be stricken out in the pre-
sence of the jury, and leave so much as makes the bill stand
barely for manslaughter.   *Ib.*

The same authority says, the safest way is to deliver the
grand jury a new bill for manslaughter.   But whatever of
doubt hangs over this question, in the English Courts, there
is none here.   The grand jury accused the prisoner of
manslaughter.   The body of the indictment makes a charge
of murder.   If the grand jury had found a bill throughout

for murder, on the trial, the petit jury might have acquitted the prisoner of murder and found him guilty of manslaughter. The prisoner is not prejudiced by the change of a single word, manslaughter for murder. He is rather benefitted, for he cannot be found guilty of murder. He was arraigned on the indictment as it stands and pleaded not guilty. If he wished to demur to the indictment for any matter not affecting the real merits of the charge, he ought to have done it on arraignment, before pleading the general issue. It is too late after pleading the general issue, and undergoing a trial thereon; for no motion in arrest of judgment can be sustained for any matter not affecting the real merits of the offence charged in the indictment.

[4.] In regard to the last ground taken in the motion in arrest of judgment, we will remark that the law does not require the jury to find their verdict in the language of the code, although the verdict of this jury is very nearly in the language of the code. They find the prisoner guilty of manslaughter in the commission of a lawful act, which probably might produce such a consequence, in an unlawful manner. This is all sufficient to enable the Court to pronounce the sentence of the law advisedly, upon the convicted defendant. It would have been an act of supererogation to have added any other part of the definition of involuntary manslaughter in the verdict, as that the killing was not intended, for the finding of manslaughter, is a finding of the absence of intention.

Judgment affirmed.