Joseph C. Andrews, plaintiff in error, *vs.* Josiah M. Mathews *et al.*, defendants in error.

A judgment junior in date to a mortgage illegally recorded for want of probate, but founded on a debt antecedent to the date of the mortgage, has priority of lien to the mortgage, and the purchaser under

the *fi. fa.* issued from such judgment, will acquire good title against the mortgage, though both the judgment creditor and the purchaser had actual notice of the defectively recorded mortgage.

Judgments. Mortgages. Liens. Before Judge CRAW-FORD. Talbot Superior Court. March Term, 1877.

The following, taken in connection with the opinion, sufficiently reports this case : A *fi. fa.* in favor of Andrews against one Ragland, founded on the foreclosure of a mortgage, was levied on certain land, which was claimed by Mathews *et al.* They claimed as purchasers at a sheriff's sale made under a common law judgment against Ragland. The mortgage was older than the judgment, but younger than the debt on which it was founded. The mortgage was defectively probated, but both plaintiff in the common law suit and claimants had actual notice of its existence. The jury found for claimants, and plaintiff excepted.

MARK H. BLANDFORD; WILLIS & WILLIS, for plaintiff in error.

PEABODY & BRANNON; J. M. MATHEWS, for defendants.

JACKSON, Judge.

This was a claim case. Andrews levied a mortgage *fi. fa.* upon a tract of land. It was claimed by Mathews and Gibson, who bought it at sheriff's sale under a common law judgment *fi. fa.* The mortgage was older than the judgment, but younger than the debt on which the judgment was obtained. It was improperly recorded—no justice of the peace or other officer attesting it, and no proper probate having been made to admit it to record; but both the judgment creditor and the purchasers at the sheriff sale—the claimants here—had actual notice of the mortgage. Indeed, it was in proof that the judgment creditor had taken a mortgage on the same property, and in it the priority of

the plaintiff's mortgage was recognized, and had afterwards sued on the notes and recovered the judgment under which the land was sold, and Mathews and Gibson had bought.

1. The sole question made in the record, and now for our adjudication, is, did the purchasers get good title, free from the lien of the mortgage, of which they had notice at the time of the purchase, and of which the judgment creditor also had notice when he got his judgment?

The court below held that the claimants' title was good; that the lien of the judgment had priority over that of the mortgage.

The Code reads that way. Section 1957 declares "that mortgages not recorded in time, remain valid against the mortgagor, but are postponed to all other liens created or obtained, or purchases made prior to the actual record. If, however, the younger lien is *created by contract,* and the party receiving it has notice of the prior unrecorded mortgage, or a purchaser has the like notice, then the lien of the older mortgage shall be held good as against them."

In the case at bar the younger lien was not created by contract, but it was a judgment, and by operation of law the lien of it attached to this property, and therefore, it would seem that this judgment creditor had the better lien; for the illegal record of the mortgage is the same in effect as if it had not been recorded. 46 *Ga.,* 256; Code, §1959.

But if the judgment creditor had the better lien, the purchaser under that judgment bought his rights and stands in his shoes, and has also the better title. 13 *Ga.,* 446; 25 *Ga.,* 689.

That the judgment creditor, under the Code, § 1957, has the better lien, as it is by operation of law, is argued strongly, if not directly ruled, in 40 *Ga.,* 535; and if that section of the Code does not mean as there contended for, we are at a loss to ascertain its meaning. Certainly a distinction is taken between a lien created by contract and one by operation of law; and while a mortgage junior to plain-

tiff's, would yield to his mortgage lien, because created by contract, a judgment would not, because its lien attaches by no trade or contract between the plaintiff and defendant, but by law, over the defendant's objections, it may be, and notwithstanding his defense. His conscience is not charged with any notice; he has made no trade by which he has got an advantage over the other party: he has pursued his remedy at law, and the law has given him the lien which he asserts and enforces. See 4 *Ga.*, 161; 13 *Ga.*, 448; 25 *Ga.*, 689.

Even in this view, we think that the law gives to these claimants—standing in the shoes of the judgment creditor—the better claim. But the debt on which the judgment creditor acquired his lien, existed before the date of plaintiff's mortgage; it was a pure debt—as much a debt as that which the plaintiff tried to secure, and as full of equity as that. In real, good conscience, it was just as much entitled to be paid. Here, then, are two *bona fide* debts—the one attempted to be secured, but not secured, by the creditor's fault in not legally recording it; the other, secured by the diligence of that other creditor in getting a legal judgment. The equities appear equal, to say the least; the law gives the advantage to the judgment creditor who has neglected no duty, but prosecuted his remedy with superior diligence and in strict accordance with the law, and by its operation solely, and by no connivance or collusion, or contract of any sort with the defendant, has acquired a lien and sold the property, and the claimants have purchased his rights, and the consequences of his lien so obtained, and have, we think, a title free from the incumbrance of this mortgage, improperly recorded, though they had actual notice of it, but, at the same time, of its irregular and defective record.

The judgment is, therefore, affirmed.