PHILLIPS & COMPANY *et al. v.* ROQUEMORE.

Equity will correct a mistake in a mortgage, whereby property intended to be included therein was inadvertently omitted, even after the mortgage has been foreclosed and the property described in it has been levied upon and sold under the mortgage *fi. fa.*; and after such correction, the lien of the mortgage on the omitted property will be superior in dignity to that of a judgment obtained after the mortgage was originally executed and before its reformation. This is so although the judgment was founded upon a debt in the contracting of which by the debtor credit was extended to him upon the faith of his apparent unincumbered ownership of the omitted property; there being, under section 3119 of the code, no protection in such cases to others than *bona fide* purchasers for value without notice.

October 5, 1895.

Equitable petition. Before Judge HUNT. Upson superior court. November term, 1894.

On February 22, 1892, W. J. Perryman executed to Mrs. Roquemore, his sister-in-law, a mortgage on a town lot in Thomaston, to secure a promissory note of that date and due one day afterwards. He was then indebted to several creditors on notes and accounts, and became indebted to others after the execution of the mortgage. These creditors obtained judgments against him in April, May, June and July, 1892, and one in May, 1893. The executions issued from said judgments were levied, July 26, 1893, on a town lot not covered by the description in the mortgage. The mortgage had been foreclosed; rule absolute had been granted in May, 1893, and the mortgage *fi. fa.* had been levied, and advertisement was made for sheriff's sale in July, 1893, of the property described in the mortgage. On September 28, 1893, Mrs. Roquemore brought her petition against Perryman and against said other creditors, alleging, that at the date of her mortgage Perryman was indebted to her $2,500, and proposed to give her a mortgage to secure the debt, on realty including the lot

levied on July 26, 1893; that she agreed to take such mortgage, and she and Perryman employed B. L. Tisinger, attorney, to draw the mortgage, and to enable him to correctly describe the property Perryman handed him an envelope containing a bond for titles to said property from J. M. Blalock to Perryman; that in the envelope was also a deed from J. D. Dunn to Perryman, conveying the property actually described in the mortgage; that in writing the mortgage, and with the intention of correctly describing the house and lot, Tisinger erroneously and through inadvertence and contrary to instructions took the description from the Dunn deed, instead of from the bond for titles; that he being a thoroughly competent attorney, the preparation of the mortgage was entrusted entirely to him, and was executed and delivered under the belief that it had been correctly drawn in accordance with the expressed desire and intention of the parties, and not until after the mortgage was foreclosed and the *fi. fa.* issued was the mistake discovered, the discovery having been made by M. H. Sandwich, attorney for Mrs. Roquemore, while writing the levy on the *fi. fa.*, and in making a plot of the lot; that the mortgage as written did not set forth the contract between the parties to it, and there was no intention on the part of either to make a mortgage on the lot described in the Dunn deed, because at the time the mortgage was written the part of lot described in the Dunn deed was not the property of Perryman, as he had previously sold it to the trustees of the Thomaston Methodist Church and made them a deed to it, except a small portion on the south end of said part of lot; and that in the present condition of her mortgage petitioner could not participate in the sale of the lot intended to be covered thereby, and if the same were sold under the *fi. fas.* levied thereon, her rights would be jeopardized and she be forced into unnecessary and expensive litigation. She

prayed for injunction; that her mortgage be reformed by inserting a correct description of the house and lot according to the intention of the parties; and that the foreclosure proceedings be so amended that a correct description of property should appear therein and in the *fi. fa.* By amendment she prayed, that the mortgage be so reformed as to include a correct description of the property intended to be inserted therein; that the same as reformed be foreclosed, and execution issue for the amount due; that the mortgage as reformed be decreed to be a lien superior to the *fi. fas.* of defendants; and that a sufficiency of the proceeds of the sale of the property be applied first to the payment of the mortgage debt.

The creditors of Perryman holding *fi. fas.* made answer, attacking the validity of any mortgage from him to Mrs. Roquemore, and denying that Tisinger drew a different mortgage from that directed, or that it was erroneously drawn through inadvertence. They alleged that Perryman went with his son-in-law, W. Y. Allen, and with J. A. Roquemore, husband and agent of petitioner, to Tisinger's office, employed him to write the mortgage, handed him the deed from Dunn to draw the mortgage from, and directed that part sold to the church to be left out, and Tisinger wrote the mortgage accordingly, and read it over to Perryman to see if the property intended to be mortgaged was properly described, and Perryman said, yes, it was all right; that it was regularly executed, delivered, filed and recorded; that after foreclosing it and before filing the present petition, petitioner and Perryman had sold the mortgaged property and petitioner purchased part of the same; that she first had it levied on in June, 1893, but did not sell at that time, and when defendants had their *fi. fas.* levied on the house and lot not included in the mortgage, and advertised the same for sale on the first Tues-

v 96-46

day in September, 1893, petitioner readvertised the property in her mortgage for sale at the same time, and through her husband and agent not only purchased property sold under her mortgage but also attended the sale of the house and lot under defendants' *fi. fas.*, and bid for the same, but another purchaser bid it off at that sale, and not paying the purchase money, the same was readvertised for sale on the first Tuesday in October, 1893; that petitioner threatened to set up a lease of said house and lot against any other purchaser than herself at the sale on the first Tuesday in September; that defendants are *bona fide* creditors of Perryman, and gave him credit on the faith of said property prior to the mortgage, and if any debt existed in favor of petitioner, it was of no priority over defendants' debts; that at the time the mortgage was made, Perryman was insolvent, and a portion of the debt claimed by petitioner was a gift by Perryman for the benefit of his daughter, and the balance had been paid off in provisions and supplies from his store to the amount of $900, and in rent of the house and lot for six or more years, of the value of $125 a year; that at the time the mortgage was made a creditor was proceeding to enforce the collection of a debt against Perryman who was insolvent, and he and petitioner and Allen got together, and Perryman gave mortgages to them separately, covering all his property except the house and lot now in controversy; that said mortgages were not made upon a *bona fide* indebtedness, but to hinder, delay and defraud creditors. Defendants asked that petitioner pay into court $600, or some such sum that she realized from the sale of other property specified in her mortgage, to be applied to the debts of defendants; that Perryman produce his books of account, showing every item of account against petitioner from 1874 to the making of the mortgage, etc.

The testimony of Mrs. Roquemore, her husband and

Perryman tended generally to support her allegations; and to show that the mortgage was given to secure a valid debt founded on a good and meritorious consideration, to wit, her services in rearing, caring for, boarding and clothing Perryman's daughter from infancy to the age of eighteen years, whose mother died when she was but seven months old, for which services Perryman promised to compensate Mrs. Roquemore; a further consideration being money loaned by her to him; that the account for goods alleged by defendants to be due from her to him was not owing by her, as she had paid for the goods by boarding Rivere and McCoy who were in Perryman's employment; that she owed him nothing for rent, as by express agreement he had been and still was boarding with her for the same; that no part of the debt against him was a gift for the benefit of his daughter; that upon a calculation he would owe Mrs. Roquemore more than $2,500; that she had received from him money and property to the amount of $600; that she bought in, by her husband, a house and lot on the Barnesville road under her mortgage, for $300 less $25 cost, the sale being at public outcry before the courthouse door, and the proceeds were credited on her claim; that defendants by their attorneys were present at the sale, made no objection thereto, and did not question her claim on the property; that she had a lease on the house and lot in question, older than any judgment in favor of defendants, which had not expired by three years; that her husband gave no notice of the lease when the house and lot were sold and bid off by Crawford who failed to comply with his bid; that he had not then been informed of his wife's rights in the premises, and if he had known at the sale of her right to have the mortgage reformed, he would have given notice of the mistake in it, and as soon as he ascertained that it could be reformed, he employed counsel for that pur-

pose; that the mortgage was made in good faith, and not to hinder, delay or defraud creditors; that Perryman made his purchases from defendants without any representation to them as to his solvency or as to what property he owned; that he was not in possession of the house and lot in dispute when said purchases were made, etc.

The testimony of Tisinger tended to support defendants' theory as to the description of property in the mortgage. They also introduced their judgments and *fi. fas.*, together with testimony that they extended credit to Perryman on the faith of the house and lot in dispute; that on the first Tuesday in September, 1893, J. A. Roquemore and M. H. Sandwich attended the sheriff's sale, and neither objected to the house and lot being sold under the *fi. fas.* of Mrs. Smith, Phillips & Co., and other creditors of Perryman; and that Sandwich, attorney for Mrs. Roquemore, bought the house and lot for her at said sale under her mortgage *fi. fa.* against Perryman. Other facts in evidence are shown in the first part of this report.

The case was submitted to the judge without a jury. He found and decreed, that the mortgage be so reformed as to include the house and lot in controversy; that as reformed it be a superior lien to that of any of defendants; that it be foreclosed for $2,500, less the money paid thereon by sale of the house and lot on the Barnesville road; and that the property in question be sold by the sheriff, after advertisement, and the proceeds applied, first to the extinguishment of the mortgage debt, and the balance to the liens of defendants according to their dignity. Defendants moved for a new trial, which was denied, and they excepted.

J. Y. ALLEN, J. A. COTTEN and R. T. DANIEL, for plaintiffs in error. M. H. SANDWICH, *contra.*

Simmons, Chief Justice.

In all cases of mistake a court of equity will, upon proper proof, reform a contract so as to make it speak the truth, and put the parties, as to each other, in the true position in which they thought they had placed themselves when they made the contract. This relief will not be confined to the original parties alone, but will be extended both to and against their privies in estate and in law. The only exception to this rule is the case of a *bona fide* purchaser without notice. Code, §3119. Judge McCay, in the case of *Burke* v. *Anderson*, 40 *Ga.* 539, gives the reason for this exception. He says: "A *bona fide* purchaser is protected because his *purchase* is upon the faith of the apparent rights of the seller. He has acted, paid out his money, upon the apparent facts of the case, as the parties have allowed them to exist. It is their fault if the papers do not speak the truth, and it is unjust that their mistake should be cured to his injury who has been misled by their failure to attend carefully to their own business." Is a judgment creditor who extended credit on the faith of the apparent ownership of the property a *bona fide* purchaser without notice? We say that he is not. He is only a privy in law of the debtor. After explaining why a *bona fide* purchaser is protected, Judge McCay, in the same opinion, says: "A judgment creditor does not stand in this position. His lien does not exist by contract. He did not advance his money to get his lien. That is an incident attached by law to his judgment. By the contract he acquired no lien. It cannot, therefore, be said that the right he now sets up is the right of a purchaser of property acquired in good faith, in ignorance of this mistake, for a consideration which he would not have advanced had the mistake never occurred. It may, it is true, be said that perhaps he would not have given the credit had the true state of the case

been put in the mortgage. That may be true, but he
got no lien at all by his original contract, and the set-
ting up of the rights of the mortgagee does not take
away any right which this creditor acquired by his con-
tract. His right in this specific property comes from his
judgment; the *law* gives it to him, to wit: a lien on the
property of the defendant. Not, as we have said, upon
property to which the defendant has simply the legal
title; his lien is good, as a general rule, upon property
to which the defendant has simply the legal title, and it
does not extend to property when the equitable title is
in a third person, though the legal title may be in the
defendant." As far back as the case of *Wall* v. *Arring-
ton,* 13 *Ga.* 88, it was held that a judgment creditor was
not such a purchaser as would be protected in such
cases. In that case Judge LUMPKIN quotes with ap-
proval from Judge Story's work on Equity Jurispru-
dence, as follows: "In *all* cases of mistake in written
instruments, courts of equity will interfere as between
the original parties, or those claiming under them, such
as personal representatives, heirs, devisees, legatees, vol-
untary grantees, or *judgment creditors,* or purchasers from
them with notice of the facts." (1 Story Eq. §165.) In
*Lowe* v. *Allen,* 68 *Ga.* 225, it was held that "a judgment
creditor whose debt was made before the making of a
deed to land, but whose judgment was obtained after-
wards, did not stand on the basis of a *bona fide* pur-
chaser without notice, so as to prevent the correction of
a mistake in the deed as against him." There are nu-
merous decisions of other courts to the same effect.
When a mistake is clearly established and the instru-
ment reformed, it relates back to the time when it was
executed. So that although these plaintiffs in error may
have extended credit upon the faith of the property in
question, yet if it was satisfactorily established that
Perryman, the debtor, had agreed to give Mrs. Roque-

more a mortgage upon this property, and by mistake of
the scrivener the instrument executed by Perryman for
that purpose did not include the property, the instru-
ment could be reformed so as to include it, and would
then stand as if the omitted property had been inserted
in the mortgage in the first instance, and the mortgage
would take priority over the judgments of other credi-
tors obtained subsequently to the execution and record-
ing of the original mortgage.

It was argued by counsel for the plaintiffs in error,
that the mortgage should be postponed to their judg-
ments, because the record of the mortgage did not in-
clude this particular property; and the case of *Andrews
v. Mathews,* 59 *Ga.* 466, is relied on as sustaining this
contention. That, however, was the case of a mortgage
illegally recorded for want of probate, and the decision
was based upon section 1957 of the code, which deals
solely with unrecorded or defectively recorded mort-
gages. Judge McCAY, in discussing the same section
in *Burke* v. *Anderson, supra,* says: "The law makes it
the duty of a mortgagee to record his mortgage, and if
he fails, it puts the penalty upon him that, as to such
liens as are cast upon the property by operation of law,
he shall be postponed. If the mortgagee has failed to
record, it is a piece of gross negligence which he ought
to suffer for. If the record is defective, if the clerk is
at fault, the mortgagee has his remedy against him. At
any rate it is the positive provision of the statute that
a failure to record or a defective record is not good
against a judgment. Notice has nothing to do with it,
since the judgment was not taken because there was no
notice. It is simply a regulation of law providing for
the priority of one lien over another, under certain pre-
scribed and definite circumstances. But it extends only
to the case mentioned in the statute, to wit, the case of
an unrecorded or defectively recorded mortgage. It

does not extend to equitable rights generally. They still stand upon the footing that they are good against the parties and their privies, except only in the case of a *bona fide* purchaser without notice. We are not prepared, therefore, to extend this provision of the code further than its terms require. . . The right to have a plain mistake corrected is a well settled right, and it extends by express words of the code to parties and privies, and to this there is no exception save the case of a *bona fide* purchaser without notice, that is, one who without notice of the equity acquires a right in the property by the advance of his consideration." The language of the code is that "equity will grant relief as between the original parties or their privies in law, in fact or in estate, except *bona fide* purchasers for value without notice." (§3119.)

This, under the rule *expressio unius exclusio alterius* forbids the idea that judgment creditors or any others than *bona fide* purchasers for value are excepted. See *Zimmer* v. *Dansby*, 56 *Ga.* 82.

The evidence in this case fully warranted the verdict and authorized a decree reforming the mortgage.

*Judgment affirmed.*