**NATIONAL ASSISTANCE BUREAU, INC., Petitioner,**

v.

**MACON MEMORIAL INTERMEDIATE CARE HOME, INC., Sowers Enterprises, Inc., and United States of America, Respondents.**

**Civil Action No. 5:06–cv–301 (CAR).**

United States District Court, M.D. Georgia, Macon Division.

June 8, 2009.

---

3. The Court declines to address the Bogush Defendants' preemption argument.

1194

Edward Scott Sell, III, Julia H. Magda, Macon, GA, for Petitioner.

Macon Memorial Intermediate Care Home Inc., Macon, GA, pro se.

Jonathan A. Alderman, Macon, GA, Gregory L. Jones, U.S. Department of Justice, Washington, DC, Hugh Randolph Aderhold, Jr., Macon, GA, for Respondents.

### ORDER ON PETITIONER'S MOTION FOR SUMMARY JUDGMENT

C. ASHLEY ROYAL, District Judge.

On February 24, 2005, the Petitioner, National Assistance Bureau, Inc. ("NAB"), purchased property related to a nursing home [1] in Bibb County, Georgia, from Re-

---

1. Within the terminology of the industry, the facility located on the property in question is more precisely referred to as an "intermediate care home." Nevertheless, for the sake of convenience the more common and less precise term "nursing home" will be used throughout this Order in reference to the facility.

spondent Sowers Enterprises, Inc. ("Sowers"). Two years earlier, on April 29, 2003, Sowers had purchased the nursing home property from Respondent Macon Memorial Intermediate Care Home, Inc. ("Macon Memorial").[2] The land on which the nursing home is located was composed of eight separate parcels. The northernmost of these eight parcels was purchased from Dorothy Vits Lewis in 1987, and has been called the "Lewis Tract" throughout this litigation. The warranty deeds for both the sale to Sowers and the sale to NAB failed to provide a property description for the Lewis Tract, which includes the north end of the nursing home building, a portion of the front parking lot, and half of an outbuilding. In this action, NAB has petitioned the Court to reform the deeds to correct the omission of the Lewis Tract, and to quiet title to the property as to all the world.

Although all parties to the sale transactions agree that the deeds should be reformed to reflect the intent of the parties to convey the entire property of the nursing home, the petition is opposed by the Respondent, the United States of America ("the Government"). The Government objects to the reformation of the deeds because it seeks to enforce tax liens filed by the Internal Revenue Service ("IRS") against Macon Memorial. These liens were imposed after the sale to Sowers. The IRS first attempted to file a lien on July 26, 2004, fifteen months after the sale. This lien was filed under an incorrect name, however, as it was recorded in the records of the Superior Court of Bibb County only under the name "Memorial Intermediate Care Home, Inc." On August 16, 2005, more than five months after the

sale from Sowers to NAB, the IRS realized its error and filed an amended notice of tax lien against "Macon Memorial Intermediate Care Home, Inc." The Government contends that the IRS tax liens attach to the Lewis Tract because Macon Memorial was the record owner of the property at the time the liens were filed. NAB contends that the liens do not attach because Macon Memorial had no interest in the property at the time that the liens were filed.

The parties agree that the facts in this case are undisputed. Upon review of these undisputed facts and the relevant legal authorities, the Court finds that equity demands the reformation of the warranty deeds of April 29, 2003, and February 24, 2005, so that they reflect the plain intent of the parties to effect the transfer of the entire nursing home property, including the property known as the Lewis Tract, first to Sowers and then to NAB. The Court further finds that this reformation relates back to the date of the transfer to Sowers executed on April 29, 2003. As such, any liens filed as to Macon Memorial subsequent to that transfer do not attach to the Lewis Tract.

## A. Equitable Reformation

The warranty deeds of April 29, 2003, and February 24, 2005, are subject to equitable reformation because it is undisputed that all parties to the transactions intended them to convey the entire property of the nursing home, including the Lewis Tract. Georgia law provides that equity shall interfere to make a conveyance conform to the intention of the parties, if it is shown that "the form of the conveyance is,

---

**2.** The original Purchase Agreement, dated February 28, 2003, was between Macon Memorial and a company called "Elan, Inc." Elan later assigned the agreement to Sowers. Likewise, Sowers initially entered into a Pur-

chase Agreement with Monroe Nursing, LLC, which then assigned the agreement to NAB. Elan and Monroe Nursing were not parties to the property deeds at issue in this case.

by accident or mistake, contrary to the intention of the parties in their contract." O.C.G.A. § 23–2–25. The equitable remedy of reformation is described by the Supreme Court of Georgia in *Chapman v. Cassels Co.*, 180 Ga. 349, 179 S.E. 91 (1935):

> Where there is in fact a sale or mortgage of property, by one man to another, and, by a mistake in the execution of the conveyance, the true intention or contract of the parties is not expressed, it is a common and very ancient jurisdiction of Courts of Equity to correct the mistake, to cause the instrument to speak the facts, and to put the parties, as to each other, in the true position in which they thought they had placed themselves. Nor is this relief confined to the original parties, but will be extended, both for and against their privies, in estate and in law.

*Id.* (quoting *Burke v. Anderson*, 40 Ga. 535 (1869)). Through reformation, equity ensures that parties to a transfer of property get the benefit of their bargain, and restores them to the position they should have occupied except for their mutual mistake in the execution of the conveyance.

The "common and very ancient" remedy of reformation was created for cases just such as the present one, in which the undisputed evidence shows that it was the true intention of Macon Memorial to transfer all of the real property associated with the nursing home to Sowers when it executed the warranty deed on April 29, 2003. It was the true intention of Sowers to purchase the entire nursing home, including all of the real property underneath it. The evidence likewise shows that Sowers intended to transfer the same real property to NAB on February 24, 2005, and that NAB intended to purchase all of it. It was only by a technical mistake, undetected by any party at the time of the transactions,

that the deeds of conveyance failed to provide a legal description of one piece of the property. As such, reformation of the deeds is required in equity to correct the mistake and put the parties in the position in which they intended to place themselves and thought they had placed themselves.

Cases factually similar to the present case demonstrate that equity warrants reformation of deeds so that they conform to the actual intent of the parties. In *Chapman*, the Supreme Court affirmed a trial court's judgment and held that reformation was proper where it was shown that a security deed did not reflect the parties' actual intent. Evidence showed that the parties intended to convey a one-fifth interest in one parcel of land and an entire interest in several other tracts. Because of a scrivener's error, the security deed indicated that only a one-fifth undivided interest was conveyed in all the tracts. In ordering equitable reformation of the conveyances, the court explained that the purpose of such reformation was to correct errors and make instruments reflect the established intent of the parties:

> In every case under this head of the law, the only inquiry is, does the instrument contain what the parties intended it should, and understood that it did? Is it their agreement? If not, then it may be reformed by aliunde proof, so as to make it the evidence of what was the true bargain ... between the parties. And it is wholly immaterial from what cause the defective execution of the intent of the parties originated.

*Id.* at 349, 179 S.E. 91. (ellipsis in original) (quoting *Wyche v. Greene*, 16 Ga. 49 (1854)).

▇ Reformation is thus appropriate even in cases where the party seeking reformation was negligent, provided there is no prejudice to the other parties to the transaction. *Id.* In *Chapman*, the Court

determined that the borrower who granted the security deed would not be prejudiced by the reformation of the deed "so as to make it speak the true contract between him and the plaintiff." *Id.* As the Court reasoned, "If [the buyer] gets what he bought, then he cannot be hurt by reforming the instrument, so as to keep him from getting what he did not buy." *Id.*

In this case, as in *Chapman,* there is no prejudice that forecloses reformation. No party to the sale transaction will be harmed by the reformation, as all the parties agree that it was their true intention to convey the entire nursing home property, indeed all real and personal property owned by Macon Memorial, first to Sowers and subsequently to NAB. The undisputed evidence shows that Macon Memorial intended to convey to Sowers all eight parcels of land on which its nursing home facility was built. Sowers, believing that it had purchased the entire property, intended to convey the same property to NAB two years later. The warranty deeds, in error, contained descriptions of only seven of the eight parcels that comprised the property. Reformation of the deeds will insure only that the buyers got what they bought and that the sellers did not get paid for something they did not sell.

A more recent case from the Court of Appeals of Georgia is more directly comparable to the present case, both in the nature of the mutual mistake and in the evidence offered to prove mutual mistake. In *Aames Funding Corp. v. Henderson,* 275 Ga.App. 323, 620 S.E.2d 503 (2005), as in this case, the evidence showed that the deed in question failed to provide a legal description of certain specific parcels that comprised the property in question. The parties in *Aames* intended to give a security deed transferring a security interest in four lots of a subdivision. The deed that was executed provided a description only

as to one of the lots, lot 17, and omitted reference to the other three, lots 18, 19, and 20. In this case, the parties intended to convey eight parcels, but the deed contained reference only to seven, omitting a description of the Lewis Tract. In *Aames,* the court concluded that "the evidence established that the erroneous description in the deed resulted from the parties' mutual mistake." *Id.* at 324, 620 S.E.2d 503. The same conclusion is warranted in this case.

The evidence of mutual mistake described in *Aames* is similar to the evidence of mutual mistake in this case. In *Aames,* the evidence included the testimony of the parties to the transaction and a common sense conclusion based on the nature of the property conveyed. The borrower testified that he had believed he was giving the lender a security interest in the entire property. The lender's representative likewise testified that the lender had intended to take a security interest in the entire property and did not realize its mistake in the property description until the time of foreclosure. Finally, the nature of the property at issue indicated an intent to transfer all four lots, not just lot 17. Each lot was twenty feet wide, and the four lots together comprised less than a third of an acre. *Id.* Lot 17, the only lot listed in the security deed, included "only the concrete patio, a small portion of the house, and the shed." *Id.* It hardly needs to be said that parties do not ordinarily intend to transfer an entire house along with just a portion of the land on which the house sits.

In this case, as in *Aames,* all parties to the sale transactions have testified that they intended to transfer the entire nursing home, including all the land underneath it. This intent is reflected not only in the testimony of the representatives of the three parties as to their intent in the transactions, but also by the fact that the parties executed corrective deeds after

they learned of the mistake, on June 29, 2006. As in *Aames,* common sense also supports this intent. In the Purchase Agreement for the sale of the nursing home business, Macon Memorial agreed to convey the nursing home facility, the real property on which it was built, and all equipment, furnishings, fixtures, and other personal property located on or used in connection with the real property or the nursing facility. The Purchase Agreement described the real property as "a certain parcel of real property located at 1509 Cedar Avenue, Macon, Bibb County, Georgia ... which parcel is improved by a 100 bed nursing facility." Sowers Dep. Ex. 1 p. 1 (Doc. 21). It would be highly implausible that the parties would intend to convey the entire nursing facility and business but keep back one tract of land that lies underneath a small wing of the building, a few spaces in the parking lot, and half of a shed. Had the parties intended to make such an odd transfer, they would no doubt have been explicit about it in their negotiations and contracts.

Based on the undisputed evidence as to the intent of the parties, the Court is able to find as a matter of law that the warranty deed from Macon Memorial to Sowers and the warranty deed from Sowers to NAB should be reformed to reflect their true intent and to effect the transfer of the Lewis Tract. There can be no dispute that it was the intent of all parties to the transactions to convey the Lewis Tract with the rest of the nursing home property and that the failure to include a description of this tract in the warranty deed was a mere scrivener's error, a mutual mistake among the parties.

**B. Relation Back**

■ The more important question in this case is whether the reformation of the contract relates back to the date of the original warranty deed from Macon Memorial to Sowers. The answer to this question will determine whether the IRS's subsequent tax lien is a valid encumbrance on the Lewis Tract. The answer is that the reformation does indeed relate back to the time the erroneous deed was first executed, consistent with Georgia law. Because the reformation relates back to that date, Macon Memorial no longer had any interest in the Lewis Tract after the execution of the deed to Sowers on April 29, 2003, and any liens filed against Macon Memorial after that date cannot encumber the Lewis Tract.

■ The Internal Revenue Code authorizes the IRS to impose a tax lien on the property of a delinquent tax payer. The Code provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, **belonging to such person.**

26 U.S.C. § 6321 (emphasis added). The IRS, then, is entitled to place a lien only on property belonging to the delinquent taxpayer, not on property belonging to third persons. The nature and extent of a taxpayer's interest in property at the time a tax lien is imposed is a question of state law. *United States v. Creamer Industries, Inc.,* 349 F.2d 625, 628 (5th Cir.1965).

■■ Because under Georgia law the reformation of the warranty deeds in this case relates back to April 29, 2003, the Lewis Tract did not belong to Macon Memorial on July 26, 2004, the date the IRS first attempted to file its liens against Macon Memorial under an incorrect name. Thus, the liens could not have attached to

the Lewis Tract, as that tract no longer belonged to Macon Memorial, but to Sowers[3]. Likewise on August 16, 2005, when the IRS filed its amended tax liens under the correct name, the Lewis Tract did not belong to Macon Memorial, but to NAB. It is a long-established principle of Georgia law that the equitable reformation of a deed relates back to the original date of execution. The essence of the equitable remedy of reformation is "to put the parties, as to each other, in the true position in which they thought they had placed themselves when they made the contract," that is, to declare that an erroneous conveyance said what it intended to say. *Phillips v. Roquemore*, 96 Ga. 719, 23 S.E. 855 (1895). As such, the remedy necessarily relates back to the time of conveyance. The remedy of reformation provides relief not only as to the original parties, but also "to and against their privies in estate and law." *Phillips* at 719, 23 S.E. 855. "The only exception to this rule is the case of a bona fide purchaser without notice." *Id.* (*See, also,* O.C.G.A. § 23–2–34).

▆▆▆ Privies in law include creditors who obtain a lien against a party by action of law. Thus, in *Phillips* the Supreme Court held that a security deed reformed to show a security interest in previously omitted property would have priority over a judgment obtained after the deed was executed but before reformation. The reformed security deed was held to take priority even though the objecting creditor had extended credit upon the understanding that the grantor continued to own the omitted property without prior encumbrance. The Court summarized its holding in language that has since been cited in both *Chapman* and *Aames*:

1. Equity will correct a mistake in a mortgage whereby property intended to be included therein was inadvertently omitted, even after the mortgage has been foreclosed, and the property described in it has been levied upon and sold under the mortgage fi. fa.; and after such correction the lien of the mortgage on the omitted property will be superior in dignity to that of a judgment obtained after the mortgage was originally executed, and before its reformation.

2. This is so although the judgment was founded upon a debt in the contracting of which by the debtor credit was extended to him upon the faith of his apparent unencumbered ownership of the omitted property; there being, under section 3119 of the Code, no protec-

---

**3.** In a footnote to its Response to Petitioner's Motion for Summary Judgment, the Government suggests that the transfer from Macon Memorial to Sowers may have been a fraudulent transfer under the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18–2–70, *et seq.* The Court's review of the evidence in this case does raise questions as to the nature of the transfer, as the principal for Macon Memorial, Georgia Edwina Evans Williams, did not recall receiving any money for the sale of the business and continued to operate the nursing home after Sowers bought it. In addition, the testimony of the principal for Sowers, William R. Hill, and of Sowers' Agent Christopher Brogdon is evasive and ambiguous as to the nature of the trans-

action and Sowers' interest. The evidence only raises questions, however, and is not sufficient to raise genuine issues of material fact. In any event, the Government has conceded that "whether the sale to Sowers should be set aside as a fraudulent conveyance is not an issue before the Court in this proceeding." Response 2, fn. 1 (Doc. 17). As such, the Government's footnote regarding potential fraudulent transfers is a mere apophasis and has not been considered in reaching the present decision. Regardless of any suspicions of fraud in the conveyance to Sowers, there is no indication that NAB was anything other than a bonafide purchaser for value.

tion in such cases to others than bona fide purchasers for value, without notice. *Id.* As the Court in *Phillips* observed, a judgment creditor is not a bona fide purchaser for value, even if the judgment creditor extended credit on the faith of the apparent ownership of the property. Such a creditor "is only a privy in law of the debtor." *Id.* The judgment creditor obtains a lien on property only by action of law. "His lien is good, as a general rule, upon property to which the defendant has simply the legal title, and it does not extend to property when the equitable title is in a third person, though the legal title may be in the defendant." *Id.* (quoting *Burke v. Anderson*, 40 Ga. 535 (1869)).

In this case, equitable title was in Sowers at the time the IRS first attempted to place a lien against Macon Memorial, and the IRS was not a bona fide purchaser for value. As such, the Government's reliance on *Irvin v. Griffin Corp.*, 808 F.2d 802 (11th Cir.1987) is misplaced. The court in Irvin, applying an Alabama statute, found that a party was entitled to reformation of a release contract despite the objections of a third party beneficiary to the contract. The court noted that under the Alabama statute, "rights of third parties are protected only if their interests *were acquired by good faith and for value.*" *Id.* at 806 (emphasis in original). Although there is no dispute that the IRS's claim arose in good faith, it did not pay value for its lien. It acquired its lien by operation of law as a result of Macon Memorial's failure to pay federal taxes. The Alabama law upon which *Irvin* relies is no more favorable to the Government's position than is Georgia law.

The Government's reliance on *Creamer* is also misplaced. Where *Irvin* applied Alabama law, *Creamer* applied Texas law. Although the factual background of *Creamer* is comparable to the factual back-ground of this case, the Texas law upon which it is decided could not be more different from Georgia law. The court describes the factual background of *Creamer* as follows:

This action was brought by a purchaser from the taxpayer. The deed had inadvertently failed to include certain real property located in Tarrant County, Texas. A correcting deed was executed and recorded after the tax lien was filed. The question is whether the federal tax lien attaches to the property erroneously omitted from the original deed.

*Id.,* 349 F.2d at 626. The court began its analysis of the case by observing, as this Court has observed, that the tax lien provisions of the Internal Revenue Code provide for a lien in favor of the United States only upon property or rights to property belonging to the delinquent taxpayer. *Id.* at 628. The nature and extent of the taxpayer's ownership interest in real property "must be determined by state law." *Id.* The "most pertinent" state law in *Creamer* was the Texas recording statute, which provided:

All bargains, sales and other conveyances whatever, of any land, tenements and hereditaments, whether they may be made for passing any estate of freehold of inheritance or for a term of years; and deeds of settlement upon marriage, whether land, money or other personal thing; and all deeds of trust and mortgages **shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk,** to be recorded as required by law; but the same as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof or without valuable consideration, shall be valid and binding

*Id.* (emphasis added) (citing 19 Vernon's Ann. Tex. Civ. St. art. 6627).

The Texas statute, which was repealed in 1983, specifically provided that an improperly recorded transfer is void as to subsequent creditors such as the IRS. Applying that statute, Texas courts had held that a parties' equitable right to reform an erroneous conveyance had no effect on a lien levied by a creditor without knowledge of the error:

> The failure to convey the lot levied upon by plaintiffs in error through mutual mistake of the parties gave defendant in error an equitable right to have the deed reformed by correction deed or a decree in equity, but, as plaintiffs in error had no knowledge of such equity at the time their levy was made, the lien thereby fixed was superior to defendant in error's right to such reformation.

*Henderson v. Odessa Bldg. & Fin. Co.*, 24 S.W.2d 393, 394 (Tex.Com.App.1930). This holding is inconsistent with Georgia law. The laws of Texas from 1965 do not govern property rights in Georgia in 2009.

There is no statute in Georgia comparable to the Texas recording statute. The Georgia recording statute makes no mention of creditors, but provides that an unrecorded conveyance is void only against "subsequent bona fide purchasers for value without notice." O.C.G.A. § 44–2–3. Georgia's statute regarding equitable reformation likewise provides that "[e]quity will grant relief as between the original parties or their privies in law, in fact, or in estate, except bona fide purchasers for value without notice." O.C.G.A. § 23–2–34. Creditors such as the IRS in this case are considered to be privies in law bound by a reformed conveyance under Georgia law. The decisions in *Henderson* and *Creamer* are thus inconsistent with the decisions in *Phillips, Chapman,* and *Aames.*

Although the Texas law upon which *Creamer* depends has no application to this case, the memorable dissent of Judge Brown in that case has persuasive value to this Court, sitting in equity. Decrying the "startling result" of the case, Judge Brown argues:

> Laws of Texas which are designed to protect innocent persons dealing in faith on the revelations of title records are twisted to permit the great national sovereign to take property from one who is the acknowledged owner of it to apply on the tax debts of another the former owner who—as the trial Court found and this Court does not dispute—has transferred the property. I do not believe that Congress ever intended any such result. I do not think that a Court should lend its hand to anything so demeaning to a sovereign.

*Creamer,* 349 F.2d at 629. In this case there are no laws of Georgia which can be twisted to permit the IRS to take or encumber property of NAB to satisfy tax liabilities that it did not incur and of which it had no notice. Neither the laws of Georgia nor the principles of equity will countenance such a result.

A tax lien is a means of collecting unpaid taxes from a particular taxpayer, and can attach only to property of the delinquent taxpayer, not to third parties. The IRS has no liens against Sowers or NAB. At the time the IRS first attempted, unsuccessfully to file its lien, Macon Memorial did not own the Lewis Tract. It had been sold to Sowers. The property had in fact been sold to Sowers before the IRS even issued its first assessment against Macon Memorial on September 30, 2003, and before the end of the tax period for which the IRS assessed the taxes, June 30, 2003. See Petitioner's Ex. I (Doc. 12). By the time the IRS finally filed its lien under the correct name, the property had been sold

again to NAB. Under long-established Georgia law Sowers, and later NAB, had equitable title in the property, even if Macon Memorial still had the recorded title as a result of the scrivener's error. In this case, the IRS is not even a judgment creditor who extended credit on the faith of Macon Memorial's apparent ownership of the property. The IRS did not extend credit to Macon Memorial based on an erroneous understanding that Macon Memorial still owned the Lewis Tract. Macon Memorial simply owed the IRS for unpaid taxes. It would be inequitable, and contrary to Georgia law, to allow the IRS to collect these taxes from a third party because of a scrivener's error.

## C. Quiet Title

■ Petitioner has asked the Court to enter judgment establishing fee simple title to the Lewis Tract in NAB against all the world, and ordering that all clouds upon the title to that property be canceled and removed. Petitioner has not shown that it has met the requirements of the Georgia Quiet Title Act (O.C.G.A. § 23–3–60, *et seq.*) and has not presented sufficient evidence to establish that it is entitled to a judgment against all the world. The evidence in this case does not place the Court in a position to determine, as a matter of law, that the property is free from any encumbrance or cloud upon title. The Court can only rule with regard to liens imposed against Macon Memorial after the transfer to Sowers on April 29, 2003.

## D. The Government's Motion to Exclude Testimony of Petitioner's Expert

■ The Government has moved to exclude the testimony of Petitioner's expert witness, Lester Dean, IV, a title examiner with roughly thirteen years experience examining titles in the State of Georgia.

The Government's motion is without merit. The conclusions Dean reaches are not in dispute in this case and his testimony is plainly admissible under Rule 702 of the Federal Rules of Evidence. The subject matter of Dean's testimony, although not scientific or even particularly complicated, is outside the understanding of the typical juror and would assist the trier of fact in understanding the evidence in this case related. Dean has the necessary knowledge, skill, experience, and training to qualify him as an expert with regard to conducting title searches in the State of Georgia. His testimony is based on reliable methods that are generally used by attorneys and paralegals in this state to conduct title searches, reliably applied to the facts in the case.

The Government presumes to dispute Dean's qualifications and his methodology, but it does not dispute his conclusions. His expert report sets forth three primary opinions. First, he states that the Lewis Tract was excluded from the description in the deed from Macon Memorial to Sowers or in the deed from Sowers to NAB. This is undisputed and is the very basis of the suit. Second, he states that at the time the deeds to Sowers and to NAB were executed, there was no survey of record from which one could determine the complete boundaries of the nursing home. This also is an undisputed fact. Third, he states his opinion that a reasonable title search would not have revealed the existence of the IRS's tax lien when it was filed under an improper name. Only this third opinion is adverse to the Government, but the Government concedes that it is correct. The Government has therefore argued on summary judgment that its lien became effective on August 16, 2005, when it filed its amended notice of tax lien under the correct name. Ultimately, this opinion played no role in the Court's decision on summary judgment, because the evidence

shows that equitable title to the Lewis Tract was already in Sowers at the time the IRS filed its first, erroneous tax lien in the name of "Memorial Intermediate Care Home, Inc."

Although Dean's conclusions are not disputed, his testimony would nevertheless have been useful to assist a trier of fact in understanding the evidence in this case, and in fact served to assist the Court in review of the Motion for Summary Judgment. The issues in this case revolve around the procedures in the State of Georgia for the filing and recording of property transfers and for searching the records of such transfers. The organization of the records room of a county courthouse and the methods for searching property records are hardly Schroedinger's equation, but they are matters outside the knowledge of the common juror. Indeed, even trial lawyers or judges without recent experience in "dirt law" may have forgotten their youthful experiences with the grantors' and grantees' indexes and the deed books and plat books of the county courthouse. As such, Dean's testimony provides useful background for the issues in this case.

Dean's testimony shows that he is properly qualified to testify as an expert in the matter of title examinations and property records in Georgia. As the Government points out, he has no formal degree or legal certification in the subject. Georgia does not provide a legal certification for title examiners and does not require any formal training or education. As Dean testified, the methods and practices of title examination are best learned by experience, and Dean has plenty of experience. He testified that he has performed as many as five title searches a day during his thirteen year career.

The record shows that Dean applied an appropriate and reliable methodology in reviewing the property records related to this case. He testified that he conducted a normal title examination and traced the title to the property at issue in this case between 1987, when the Lewis Tract was acquired, and 2005, when NAB purchased the nursing home property from Sowers. He explained that a title examiner begins with the legal description and current known owner of the property, then traces the title backwards using the grantee indexes. After tracing back, normally for a period of fifty years, the examiner then retraces the chain of title forward through the grantor indexes. For each transfer described in the indexes, he should cross-reference the deeds and plats in the record books. This is the basic procedure for conducting a title examination and is not controversial. Dean's testimony shows that he applied this procedure to his search in this case, and the results of his search are not controversial, either.

The Court has not relied on Dean's testimony in reaching a decision on Petitioner's Motion for Summary Judgment, and the Government's Motion In Limine to exclude his testimony is essentially moot. Nevertheless, because Dean's testimony would be admissible under Rule 702, that Motion (Doc. 14) is **DENIED.**

**E. Order of the Court**

For the reasons set forth above, Petitioner's Motion for Summary Judgment (Doc. 12) is **GRANTED.** It is hereby **ORDERED AND DECREED** that title to the Lewis Tract was in Sowers absolutely and in fee simple as of the date of execution of its Warranty Deed from Macon Memorial, on April 29, 2003. The deed from Macon Memorial to Sowers, dated April 29, 2003, shall be reformed in equity to include a correct legal description of the Lewis Tract. It is further **ORDERED AND DECREED** that title to the Lewis

1204

Tract passed to NAB, absolutely and in fee simple as of the date of execution of its Warranty Deed with Sowers, February 24, 2005. The deed from Sowers to NAB, dated February 24, 2005, shall be reformed in equity to include a correct legal description of the Lewis Tract. Any liens imposed against Macon Memorial subsequent to the transfer to Sowers on April 29, 2003, including the liens imposed by the IRS on July 26, 2004, or August 16, 2005, shall not attach to the Lewis Tract. The Petitioner is **HEREBY DIRECTED** to prepare and submit to the Court, subject to review by Respondents, any order or document necessary to perfect the records of the Bibb County Superior Court as to the title of the Lewis Tract, in accordance with the terms of this Order.